***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN KAPLAN,<br><br>        Plaintiff,<br><br>v.<br><br>BEST BUY STORES, L.P.,<br><br>        Defendant. | Civil Action No. 19-21136 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Plaintiff Steven Kaplan ("Plaintiff" or "Mr. Kaplan") filed this negligence action against Defendant Best Buy Stores, L.P. ("Best Buy" or "Defendant") in connection with his exposure to a loud noise from a stereo demonstration at a Best Buy store. Presently before the Court is a motion for summary judgment filed by Defendant and a motion for reconsideration filed by Plaintiff. On July 27, 2022, the Court granted Defendant's motion for summary judgment on the record following oral argument; however, the Court reserved the right to supplement its oral opinion with a written opinion, pursuant to L. App. R. 3.1. Thereafter, Plaintiff filed a notice of appeal and the instant motion for reconsideration. In this Opinion, the Court supplements its reasoning for granting Best Buy's motion for summary judgment and considers Plaintiff's motion for reconsideration.

As I have explained on the record, the motion for summary judgment filed by Best Buy is **GRANTED**, and for the reasons that follow, the motion for reconsideration filed by Plaintiff is **DENIED**.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are undisputed unless otherwise noted.

On November 6, 2017, Plaintiff was visiting a Best Buy located in Eatontown, New Jersey, when he was exposed to a loud noise emanating from a "boom box" stereo that was being demonstrated to another customer by Best Buy employee Matthew Lonseth. (Def. SUMF, ¶¶ 1, 5.) Plaintiff testified that the stereo, which was "maybe twelve inches" from him when Mr. Lonseth activated the device, was located in a section of the store where other speakers and sound systems were stacked on shelves. (*Id.* at ¶ 4; Pl. SUMF, ¶ 9.) Plaintiff also testified that he did not know the decibel level of the stereo when it was activated by Mr. Lonseth. (*Id.* at ¶ 2.) According to Mr. Lonseth, a sales consultant in the connected devices department, a customer requested his assistance in conducting a demonstration of a Sony speaker on the day of Plaintiff's incident. (Certification of Matthew Lonseth in Support of Def.'s Motion for Summary Judgment ("Lonseth Cert."), ¶ 5.) Mr. Lonseth certified that the volume levels for the sound demonstration of the particular speaker being tested are preset by Sony and/or Sony's vendor. (*Id.* at ¶ 7.) Mr. Lonseth also stated that Best Buy does not control the preset volume for demonstration, and that according to Best Buy's policies and procedures, audio is muted on the speaker when a customer is not interacting with it. (*Id.* at ¶¶ 7-9.) Once the speaker is activated, the customer or the Best Buy employee can increase or decrease the volume of the speaker on display. (*Id.* at ¶ 10.) With respect to Plaintiff's specific incident, Mr. Lonseth explained that the speaker he was demonstrating began playing audio at its preset volume until Mr. Lonseth reduced the volume after approximately five to ten seconds. (*Id.* at ¶ 11.)

Following the incident, Plaintiff claims that he experienced pain and pressure in his right ear for approximately 24 to 36 hours, but this pain eventually resolved. (Def. SUMF, ¶ 14.) Then, on June 9, 2018, approximately seven months after the incident at Best Buy, Plaintiff began

2

experiencing pain once again in his right ear after installing Sonos speakers at his home. (*Id.* at ¶ 15.) According to Plaintiff, the pain he experienced in his ear following the installation of his home speakers was different than the pain he experienced for the 24 to 36 hours following the incident at Best Buy in November 2017. (*Id.* at ¶ 16.) Plaintiff testified that after the Best Buy incident he had a "stuffiness" feeling in his right ear, while after the installation of the Sonos speakers, he had an "earache with hypersensitivity to sounds." (*Id.* at ¶ 17.) Plaintiff was diagnosed with, and received treatment for, hyperacusis and related depression, allegedly, as a result of the Best Buy incident. (Pl. SUMF, ¶ 3.)

On November 4, 2019, Plaintiff filed the instant Complaint in the Superior Court of New Jersey, Law Division, Monmouth County, asserting negligence claims against Best Buy. Best Buy timely removed the Complaint to this Court pursuant to 28 U.S.C § 1332 on the basis of diversity jurisdiction. (*See* ECF No. 1, Notice of Removal.) On March 14, 2022, Best Buy filed a motion for summary judgment, which the Court granted on the record following oral argument on July 27, 2022. (ECF No. 29.)

At oral argument, the Court addressed Mr. Lonseth's certification in support of Best Buy's motion for summary judgment. (ECF No. 41 ("Hearing Transcript".)) At no point during discovery did Best Buy identify Mr. Lonseth as a person with potential information about the incident described in Plaintiff's Complaint. (*Id.* at 3:4 to 4:23.) Moreover, despite including his certification in support of its motion for summary judgment, Best Buy never amended its initial disclosures or answers to interrogatories to include Mr. Lonseth. (*Id.* at 3:12 to 17.) While I highlighted that Plaintiff also did not move to strike Mr. Lonseth's certification, I nonetheless explained that the Court would not consider Mr. Lonseth's statements because of Best Buy's conduct. (*Id.* at 4:19 to 23.) Nonetheless, I also found that the Mr. Lonseth's statements were not necessary to decide the

3

motion. In granting summary judgment in favor of Best Buy, I found that Plaintiff's failure to provide an expert opinion as to liability was fatal to his case. (*Id.* at 4:24 to 5:6.) Specifically, I found that without any evidence regarding the stereo's maximum volume, the decibel level of the stereo at the time of Plaintiff's incident, or the appropriate distance a person should stand when the device is at such volumes, Plaintiff could not prove his negligence claim. (*Id.* at 6:16 to 21.) The Court reserved the right to supplement its oral opinion with a written opinion, pursuant to L. App. R. 3.1. (ECF No. 40.)

On August 23, 2022, Plaintiff filed a motion for reconsideration, and on August 25, 2022, he filed a notice of appeal. (ECF Nos. 42 and 43.) This written opinion follows.

## II.  **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255; *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the moving party, that party "must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative

4

evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Rado Corp.*, 475 U.S. 574, 586 (1986).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DISCUSSION

#### A. Best Buy's Motion for Summary Judgment

First, in support of its motion for summary judgment, Best Buy argues that Plaintiff provides no facts or expert opinion to establish a *prima facie* case of negligence. According to Best Buy, Plaintiff merely alleges that Best Buy was negligent in allowing a dangerous condition to exist on its premises, *i.e.*, the loud noise emanating from the stereo. However, in that regard, Best

Buy claims that Plaintiff has failed to provide any evidence establishing the volume of the speaker when it allegedly caused Plaintiff's injuries, who was responsible for setting the volume level of the speaker, and whether the volume of the speaker was in violation of any recognized custom or standard. In response, Plaintiff argues that the "crux of [his] case here, is that the Best Buy employee played a "boom box" or speaker device too close to the plaintiff at a loud volume without any prior warning." According to Plaintiff, these issues are not "beyond the ken of the average layperson," and therefore, no expert testimony on liability is needed. I agree with Best Buy's position.

To survive a motion for summary judgment, a plaintiff must present sufficient evidence to establish a *prima facie* case of negligence. *Krough v. Calpine*, 18-15733, 2020 WL 5798760, at *2 (D.N.J. Sept. 29, 2020), *aff'd*, 20-3027, 2021 WL 4347741 (3d Cir. Sept. 24, 2021). "To establish a *prima facie* case of negligence, a plaintiff must establish the following elements: (1) duty of care, (2) breach of that duty, (3) proximate cause, and (4) damages." *Id.* (quoting *D'Alessandro v. Hartzel*, 29 A.3d 1112, 1114 (App. Div. 2011)) (internal citations omitted).

It is undisputed that Plaintiff did not serve a liability expert report. The New Jersey Supreme Court established the standard for when an expert is required in order for a plaintiff to prove negligence in *Butler v. Acme Markets, Inc.*, 89 N.J. 270, 283 (1982). In that connection, the *Butler* Court found:

> [T]he test of need of expert testimony is whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable.

*Id.* at 283; *see also State v. Zola*, 112 N.J. 384 (1998) (citing the *Butler* standard for when expert testimony is required to establish the duty of care); *Lesniak v. County of Bergen*, 117 N.J. 563 (1989) (same). In cases that do not require expert testimony, the facts are such that "a layperson's

6

common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion." *Davis v. Brickman Landscaping, Ltd.*, 219 N.J. 395, 407 (2014) (quoting *Giantonnio v. Taccard*, 291 N.J. Super. 31, 43 (App. Div. 1996)). On the other hand, when the jury would be left to "speculate," "the plaintiff must instead 'establish the requisite standard of care and [the defendant's] deviation from that standard' by 'present[ing] reliable expert testimony on the subject.' " *Id.* "[T]he common knowledge doctrine is to be construed narrowly." *Satec, Inc. v. Hanover Ins. Grp.*, 450 N.J. Super. 319, 334 (App. Div. 2017) (citing *Hubbard v. Reed*, 168 N.J. 387, 395-96 (2001)). The exception under the doctrine is limited to cases "involv[ing] situations where the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience." *Rosenberg v. Cahill*, 99 N.J. 318, 325 (1985). As the New Jersey Supreme Court observed in *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 450 (1993), "some hazards are relatively commonplace and ordinary and do not require the explanation of experts in order for their danger to be understood by average persons."

In this regard, Best Buy correctly highlights that without an expert opinion, the jury would have to "engage in pure speculation to determine the volume of the speaker at the time of the subject incident, whether the volume setting was in accordance with all recognized customs and standards for sound demonstrations and whether Best Buy and/or its employee was negligent in how the demonstration was conducted on the date of plaintiff's alleged incident." The Appellate Division's decision in *Tripodi v. Big Top Arcade/ Hershey*, No. A-4188-17, 2019 WL 2420555, at *2 (App. Div. June 10, 2019), relied upon by Best Buy in support of its position, is persuasive. There, the plaintiffs appealed from the Law Division's order granting the defendant's motion for summary judgment and dismissing the plaintiff's complaint. Similar to the present circumstances, the plaintiffs alleged that they "sustain[ed] severe and permanent injuries inclusive of significant

7

hearing loss," after firing "a defective paintball gun" at a shooting gallery amusement stand the defendant operated on the Seaside Heights boardwalk. The plaintiffs, however, failed to present an expert on the question of the defendant's alleged negligence, and therefore, the trial court ruled that without an expert, the plaintiffs could not establish that the defendant was responsible for any injuries they may have sustained. On appeal, the plaintiffs argued that their proofs were sufficient to withstand summary judgment under the doctrine of *res ipsa loquitur* even though they failed to produce an expert. The Appellate Division disagreed, affirming the trial court order granting summary judgment in favor of the defendants.

Affirming the trial court's decision, the Appellate Division in *Tripodi* emphasized that "[i]n spite of the complex nature of these claims, however, plaintiffs did not produce an expert report on the question of negligence." In particular, the appellate panel reasoned that:

> plaintiffs failed to present any evidence that they ever had the paintball gun or any associated equipment inspected by an expert with knowledge concerning the proper operation and maintenance of paintball guns or compressed air lines. The record did not contain any photographs or a verbal description of the gun or the compressed air lines. Plaintiffs did not demonstrate whether each gun had its own compressed air line, whether a single line was used for all of the guns available at the stand, or how the lines were even attached to the guns. Plaintiffs also did not proffer any information concerning the age and overall condition of the equipment used at the stand, or whether defendant deviated from any industry-wide requirements to inspect or maintain the equipment.

> Perhaps more importantly, plaintiffs failed to present any information concerning the nature of the sounds that normally emanate from a paintball gun, what sounds are made when a paintball hits a target, and how the "loud bang" plaintiffs allegedly heard differed from any sounds normally caused by firing a paintball gun. In addition, nothing in the record would inform a jury whether or not "backfire" noises may sometimes occur from the compressed air lines when the equipment is used in the normal course of operation, and in the absence of any defect or negligence.

Here, Plaintiff testified that the stereo was on its loudest setting at the time of the incident; however, even assuming that to be true, no evidence exists in the record to provide critical context to that statement. For example, no evidence exists as to the decibel level of the stereo's highest

volume setting, nor is there any evidence regarding what distance is safe for a person to stand in relation to a stereo playing noise at such a volume.[1] Without expert opinion on these issues, Plaintiff cannot possibly show that Best Buy deviated from a standard of care in order to prove his negligence claim. Indeed, in the context of nuisance claims, several analogous cases involving loud noises, demonstrate the need for expert opinion. *See DiLeone v. Twp. of Mahwah*, A-1204-08T1, 2010 WL 770964, at *2 (App. Div. Mar. 9, 2010) (environmental engineering expert opined that the township's fire sirens reached decibel levels exceeding 100, which exceeded a variety of state and federal noise level standards); *Ocean Club Condo. Ass'n v. D'Amato*, A-0175-04T3, 2006 WL 2335073, at *4 (App. Div. Aug. 14, 2006) (expert measured the decibel level of elevator noise in the plaintiffs' apartments and opined whether those levels could cause discomfort or hearing loss). Put simply, merely alleging that the noise was loud, and showing that the noise resulted in injury, is insufficient.[2]

To the extent that Plaintiff argues that it could not obtain this information since Best Buy never identified Mr. Lonseth, I find that argument unpersuasive. As discussed extensively at oral argument, Plaintiff could have conducted its own investigation to determine employees with potential information related to his claim. Specifically, he could have made requests to the Magistrate Judge for payroll records and other documentation that would have shown who was working on the date of Plaintiff's incident. Plaintiff failed to do so. In fact, Plaintiff did not request

---

[1] Moreover, with respect to distancing, it is not contested that several other individuals, including Mr. Lonseth, the other customer interested in purchasing the stereo, and a cashier were in close proximity to the stereo when it was activated. No evidence exists that any of these other individuals reacted to the loud noise described by Plaintiff, nor is there any evidence that they suffered any injuries as a result.

[2] I also highlight, with respect to causation, that Plaintiff testified that he did not have any pain or other issues with his hearing from a day or two after the Best Buy incident to June 2018, when he installed a Sonos speaker system in his house. (Pl. Dep. Tr., 78:6 to 12.) Specifically, Plaintiff testified that when installing and programming the Sonos speakers, the speakers emitted an "unusual sound." (Id. at 87:11 to 18.) According to Plaintiff, after completing the installation his ear began to hurt. (Id. at 89:19 to 90:2.)

any depositions from Best Buy and did not seek document production. Accordingly, I find that summary judgment is granted in favor of Best Buy.

### B. Plaintiff's Motion for Reconsideration

Turning to Plaintiff's motion for reconsideration, Plaintiff submits that his counsel inadvertently omitted certain facts during oral argument that "may have bolstered the Plaintiff's opposition to the relief sought by the Defendant." Specifically, Plaintiff highlights portions of his own deposition testimony, as well as testimony from his experts in otolaryngology and hyperacusis, that relate to the events of the incident and the nature of his injuries. For example, Plaintiff stresses that at the time of the incident, he heard a "blast of sound from a very close distance," and that he "felt like [he] had just been shot in the head." With respect to his medical experts, Plaintiff stresses testimony that, according to him, demonstrates that he suffered an "acoustic shock" when the Best Buy employee turned on the stereo and that this shock was the cause Plaintiff's hyperacusis condition.

Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1 govern motions for reconsideration, which are considered "extremely limited procedural vehicle[s]." *Resorts Int'l v. Greate Bay Hotel & Casino, Inc.*, 830 F. Supp. 826, 831 (D.N.J. 1992). Indeed, requests for reconsideration "are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citing *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)); *see also Church & Dwight Co., Inc. v. Abbott Labs.*, 545 F. Supp. 2d 447, 450 (D.N.J. 2008) ("The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter."). Pursuant to Local Civil Rule 7.1(i), a litigant moving for reconsideration must "set[ ]

10

forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." L. Civ. R. 7.1(i). In doing so, the moving party must demonstrate at least one of the following grounds: (1) "an intervening change in the controlling law"; (2) "the availability of new evidence that was not available" prior to entry of judgment; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *See Blystone*, 664 F.3d at 415. Importantly, "[a] party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.' " *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990) (citations omitted). "A motion that merely raises a disagreement with the Court's initial decision is not an appropriate reconsideration motion, but should be dealt with in the normal appellate process." *Church & Dwight Co.*, 545 F. Supp. 2d at 450.

Here, it is undisputed that the expert opinions and deposition testimony relied on by Plaintiff were well within his control at the time Plaintiff opposed Best Buy's motion for summary judgment and at the time the Court held oral argument. Plaintiff served his expert reports on June 3, 2021 and December 23, 2021, respectively, and as such, Dr. Martin Pienkowski's report was in Plaintiff's possession for approximately twelve months and Dr. Gerald West's report was in Plaintiff's possession for approximately six months prior to the filing of Plaintiff's opposition on June 10, 2022. Because the evidence now relied on by Plaintiff was clearly within his control, and was available when he opposed Best Buy's motion for summary judgment, it is not a basis for setting aside the Court's prior decision.[3] *Cranmer v. Philadelphia Indem. Ins. Co.*, No. 14-3206, 2016 WL 3566728, at *4 (D.N.J. June 30, 2016) ("[A]ll of the evidence submitted in support of

---

[3] The Court notes that while the expert report and deposition testimony of Dr. West (Plaintiff's expert in otolaryngology) was not provided by Plaintiff or Best Buy in connection with the underlying summary judgment motion, an exhibit attached to Plaintiff's opposition to Best Buy's motion for summary judgment summarized the opinion of Dr. Pienkowski (Plaintiff's expert in hyperacusis).

11

the present motion appears to have been available during the pendency of summary judgment, and Plaintiffs provide no explanation why this evidence was not submitted in opposition to the motion. This alone constitutes a sufficient basis for the court to disregard the new evidence."). In addition, even considering the testimony highlighted by Plaintiff on this motion for reconsideration, that testimony does not resolve the standard of cares issues raised by the Court, *supra*. None of Plaintiff's experts, nor Plaintiff, can attest to the volume of the stereo at the time of the incident or the proximity that a person should be from such a stereo to avoid risk of injury.

Finally, to the extent that Plaintiff also claims that the Court was not aware of certain statements made by Plaintiff in his deposition, because the Court only reviewed an excerpted transcript, that is untrue. Prior to oral argument, the Court requested, and was provided, a complete copy of Plaintiff's deposition transcript. Accordingly, because Plaintiff does not argue an intervening change of law or the need to correct a clear error of law or fact, and he fails to provide any new evidence that was previously unavailable, Plaintiff's motion for reconsideration is denied.

### IV. CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by Best Buy is **GRANTED**, and the motion for reconsideration filed by Plaintiff is **DENIED**.

Dated: December 14, 2022

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge